■ In the Matter of WILLIAM PFOSER, Respondent, v. WILLIAM F. LARKIN et al., Constituting the Board of Elections of the City of New York, Appellants.— In a proceeding pursuant to section 330 of the Election Law to declare void the primary election held June 20, 1972 and to direct the holding of a new primary election for the office of Republican Party State Committeeman in the 33rd Assembly District, Queens County, respondents appeal from a judgment of the Supreme Court, Queens County, dated August 4, 1972, which *inter alia,* granted the petition and directed a special election to be held on September 12, 1972. Judgment reversed on the law and the facts, without costs, motion to dismiss the petition granted, and respondent Hall declared the winner of the primary election, held June 20, 1972, in accordance with the following memorandum: In the instant primary 1660 votes were cast, 861 for the winner and 799 for the loser. The winning margin was 62 votes. The successful candidate (Robert J. Hall) received 51.9% of the votes and petitioner William Pfoser received 48.1%. The election was conducted on the same voting machines as were used for other primaries for various party positions in the Democratic and Liberal Parties. It appears that 9,867 votes were involved in all three primary elections. Petitioner alleged, and Special Term found as a fact, that 230 irregular votes were cast in the Republican primary. This figure consisted of 27 void votes due to unsigned voter registration cards, nonparty registrants and improper or forged signatures, and another 203 irregularities consisting of an excess in the public counter numbers over the number of signed voter registration (buff) cards. On this basis, Special Term directed a new election. In our opinion, Special Term was in error and Hall, one of the respondents-appellants, should have been declared the winner of the primary election. Petitioner and his

mother testified merely that they had personally checked a number of election districts where the excess of public counter numbers over buff cards totaled 83. The remainder of the 203 alleged irregularities were shown only by hearsay evidence, and not by common law proof. A new election will not be required on the "mere mathematical possibility that the results could have been changed" (*Matter of Badillo* v. *Santangelo*, 15 A D 2d 341, 342). The burden lies with the party attempting to impeach the results to show that the "irregularities are sufficiently large in number to establish the probability that the result would be changed by a shift in, or invalidation of, the questioned votes" (*Matter of Ippolito* v. *Power*, 22 N Y 2d 594, 597–598; see, also, *Matter of De Martini* v. *Power*, 27 N Y 2d 149). Considered under these standards, the irregularities actually testified to below, i.e., a total of 110, consisting of 83 due to a disparity between public counter and buff cards and 27 other void votes, do not warrant invalidation of the election. Although the successful candidate was elected with 51.9% of the votes, his majority would not be lost unless over 75% of the irregularities were cast in his favor. It taxes credulity to assume that, in so close a contest, such an extreme percentage would be cast in one direction (*Matter of De Martini* v. *Power, supra*). Moreover, even if we accept petitioner's figure of 230 irregularities, the successful candidate's plurality would not be lost unless approximately 64% of the irregularities were cast in his favor. Such a possibility in our opinion is similarly unlikely. In addition, the figure of 203 irregularities must be reduced proportionately to reflect the fact that the vote in the Republican primary was only 1/6th of the total vote cast for the various Republican, Democratic and Liberal Party primary contests. Under these facts and in the conceded absence of fraud, a valid determination is not rendered impossible by the remote possibility of a changed result (*Matter of De Martini* v. *Power, supra*). Findings of fact insofar as they may be inconsistent herewith are reversed, and new findings are made as indicated herein. Rabin, P. J., Hopkins, Munder, Shapiro and Christ, JJ., concur.